United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TRANSONIC SYSTEMS, INC.

Plaintiff,

v.

FRESENIUS USA, INC.; and FRESENIUS MEDICAL CARE HOLDINGS, INC.

Defendants.
_______________________________________/

No. C 03-4969 SI

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '989 AND '419 PATENTS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT, AND DENYING DEFENDANTS' MOTION TO STRIKE**

Now before the Court are the parties' cross-motions for summary judgment, which were submitted without oral argument pursuant to Civil Local Rule 7-1(b), and defendants' motion to strike what they claim is new evidence improperly submitted with plaintiff's reply. Having carefully considered the submitted papers, and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment and DENIES plaintiff's cross-motion. In addition, the Court DENIES defendants' motion to strike as being moot.

**BACKGROUND**

On November 7, 2003, plaintiff Transonic Systems, Inc. ("Transonic") sued defendants Fresenius USA, Inc. and Fresenius Medical Care Holdings, Inc. ("Fresenius") for infringement of two patents owned by Transonic, U.S. Patent Nos. 5,685,989 ("the '989 patent") and 6,514,419 B2 ("the '419 patent"). Transonic and Fresenius both develop and market technology related to kidney dialysis. Patients are prepared for dialysis by having a shunt surgically implanted, connecting an artery and a vein; blood flows naturally from the arterial or "upstream" end of the shunt to the venous or

"downstream" end. *See* Krivitski Decl. ¶ 12. Dialysis works by drawing blood from the upstream (arterial) end of the shunt into one chamber of a two-chamber dialyzer. *See id.* at ¶¶ 13-15. An electrolyte solution called "dialysate" is pumped through the other dialyzer chamber. *See id*. A semi-permeable membrane separates the two chambers, allowing certain particles to diffuse through it in either direction. *See id*. Urea and other impurities that are present in the blood but not in the dialysate are thus drawn into the dialysate, which flows out of the dialysate chamber and is discarded. *See id*. at ¶ 16. The cleaned blood then flows back into the shunt downstream of the location from which it was drawn into the dialyzer. *See id*. at ¶ 13. A problem called "recirculation" can occur if the downstream portion of the shunt becomes clogged, as this causes already-cleaned blood to be drawn back into the dialyzer. *See id*. at ¶ 20. The Transonic patents and the method used by Fresenius each seek to calculate the rate of blood flow through the shunt to determine whether recirculation is reducing dialysis efficiency to an undesirable extent. *See id*. at ¶ 21; Ward Decl. ¶ 36.[1]

**I. Transonic's Patents**

The '989 and '419 patents teach a method of ascertaining the rate of shunt blood flow through principles of indicator dilution. *See* '989 patent col. 1, ll. 50-65; '419 patent col. 1, l. 60 - col 2, l. 6. Specifically, Transonic's method requires the temporary reversal of the blood lines such that blood is drawn into the dialyzer chamber from the downstream end of the shunt and returned to the shunt at the upstream location, maximizing recirculation for the purpose of flow rate calculation. *See* '989 patent col. 2, ll. 1-34; '419 patent col. 2, ii. 6-40. An indicator, such as sodium, is then injected into the upstream line, from which it enters the shunt and mixes with the blood flowing through the shunt. *See id*. This mixed blood is then drawn up into the dialyzer chamber through the downstream line. *See id*.

---

[1] Transonic argues that Dr. Ward is not competent to testify under Rule 56 of the Federal Rules of Civil Procedure, rendering his testimony inherently unreliable. This incompetence argument is based on Dr. Ward's allegedly incorrect definition of "access flow rate" given in a deposition. According to Transonic, Dr. Ward testified that "access flow rate" means "the sum of blood entering the shunt from the peripheral circulation and blood entering the shunt from the outlet of the dialyzer." Ward Dep. at 139:18-24. As an initial matter, the Court notes that Transonic has not submitted page 139 of Dr. Ward's deposition. However, even assuming Transonic has correctly quoted Dr. Ward, the Court finds that Dr. Ward's definition is correct in the context of the Transonic method in which the blood lines are reversed, as discussed *infra*. *See* Ward Suppl. Decl. ¶ 150 (definition is correct in context).

United States District Court
For the Northern District of California

The sodium concentration of the mixed blood in the downstream line is ascertained by measuring the sound velocity of the blood, and this value is then used in an indicator dilution equation that solves for the shunt blood flow rate. *See id.*

**II. The Fresenius Method**

Fresenius' method, for which it has obtained U.S. Patent No. 6,648,845 ("the '845 patent"), calculates shunt blood flow through measurements of dialysis efficiency called "dialysance." Ward Decl. ¶¶ 45-47. This is done by increasing the concentration of a particle contained in the inflow dialysate, typically sodium,[2] which then enters the chamber and interacts with the blood through the membrane until the sodium level in the dialysate reaches a steady state. *See id.* at ¶¶ 33, 40. Once steady state is reached, a single reading of inlet and outlet dialysate conductivity is taken. *See id.* at ¶ 40. The dialysate sodium concentration is then reduced, and the same reading is taken when sodium concentration again reaches steady state. *See id.* These two values are used to calculate dialysance. *See id.* The Fresenius method requires one dialysance measurement with the blood lines in their standard configuration and a second dialysance measurement with the blood lines reversed. *See id.* at ¶¶ 46-47. These two dialysance measurements can then be used to calculate shunt blood flow. *See id.* at ¶ 50.

Now before the Court are Fresenius' motion for summary judgment of noninfringement of the '989 and '419 patents and Transonic's cross-motion for summary judgment of infringement of the same patents, as well as Fresenius' motion to strike what it alleges is new evidence submitted with Transonic's reply brief.

**LEGAL STANDARD**

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc.*

---

[2] Substances other than sodium may be used with both the Transonic method and the Fresenius method. This order will make reference to sodium since both parties argue in terms of sodium and Transonic's patent specifications refer to sodium.

*v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-moving party to "designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To establish infringement every limitation in a claim must be in the accused product, either exactly or by substantial equivalent. *See Carroll Touch, Inc., v. Electro Mechanical Systems*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). A claim is literally infringed if the accused product is exactly the same as each element of the asserted claim. *See Hi-Life Products, Inc. v. American National Water-Mattress Corp.*, 842 F.2d 323, 325 (Fed. Cir. 1986). Even if a product does not literally infringe it may infringe under the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997). "A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

## DISCUSSION

### I. Literal Infringement

Fresenius moves for summary judgment of non-infringement of the '989 and '419 patents on the grounds that its method does not practice any of three limitations contained in virtually identical form in Claim 1 of the '989 patent and Claims 1 and 10 of the '419 patent. Transonic moves for summary



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

judgment of infringement on grounds that Fresenius practices each of the same three limitations.[3] These three limitations shall be referred to as the "changing" limitation, the "measuring" limitation, and the "calculating" limitation. The three limitations shall be examined in turn.

### A. "Changing"

The "changing" limitation is expressed as follows:

> Claim 1 of the '989 patent: "changing a selected blood parameter in blood flowing in said circulating system to produce a distinguishable blood characteristic in blood which is delivered to the arterio-venous shunt"
>
> Claim 1 of the '419 patent: "changing a selected blood parameter in blood flowing in the circulating system to produce a measurable physical characteristic of the blood which is delivered to the arterio-venous shunt"
>
> Claim 10 of the '419 patent: "changing a selected blood parameter in blood flowing in the circulating system to produce a distinguishable blood characteristic in blood which is delivered to the arterio-venous shunt"

In other litigation dealing with the '989 patent, the Federal Circuit has upheld a construction of "changing" as meaning "to make different, modify, or alter." *Transonic Sys. v. Non-Invasive Med. Techs. Corp.*, 10 Fed. Appx. 928, 931, 933 (Fed. Cir. 2001). In doing so, the court upheld the lower court's determination that "changing" does not require the injection of an indicator into the blood. *See id*. The parties do not dispute that this construction governs, but Fresenius argues that the Fresenius method does not change a "selected" blood parameter because it changes dialysate, not blood. Fresenius seeks to apply a dictionary definition of "selected" in this context as meaning "singled out in preference" or "choosing a selected parameter," contending that its method only singles out a dialysate parameter for change.[4] American Heritage Dictionary Second College Edition 1111 (2d ed. 1982);

---

[3] Transonic asserts in its cross-motion that Fresenius has already admitted to infringing the first three limitations of Claim 1 of the '989 patent and Claims 1 and 10 of the '419 patent of "delivering," "mixing"/"combining," and "removing." Fresenius responds that Transonic's argument on this issue is inadequately developed to justify Transonic's motion for summary judgment. The Court need not address these arguments in light of its conclusion that the Fresenius method does not infringe the "measuring" limitation of Transonic's patents.

[4] Both parties advance dictionary definitions for claim terms throughout their papers. In keeping with the claim construction principles outlined in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Court shall consider such extrinsic evidence solely in the context of the claims and specification. *Id*. at 1321-22.

United States District Court
For the Northern District of California

Ward Decl. ¶ 72-75. Fresenius further argues that the change in blood sodium concentration that does occur as a consequence of sodium diffusion across the membrane is merely incidental.

Transonic agrees with this definition, but argues that blood sodium concentration is the selected blood parameter since introduction of more sodium in the dialysate inherently causes an increase in blood sodium through diffusion. Transonic also argues that the entire purpose of changing the dialysate is to produce a corresponding change in the blood since the Fresenius method would not otherwise work, and it is irrelevant that this change is accomplished indirectly.

Transonic's argument is persuasive. Dr. Frank Gotch, the named inventor on Fresenius's '845 patent, acknowledges that the Fresenius method would not work if changing the sodium concentration of the dialysate did not change the sodium concentration of the blood, since the inlet and outlet dialysate sodium concentrations would otherwise be identical. *See* Gotch Dep. at 48:18-49:4. The Fresenius method depends on altering a blood characteristic, as that alteration is intertwined with the required change in dialysate. The Federal Circuit's construction of "changing" as encompassing methods other than the direct addition of an indicator into the blood forecloses any argument that a method which changes the blood through changing the dialysate does not fall into the "changing" limitation.

Fresenius also argues, based on the principle that a claim should be interpreted in the context of the entire patent, that the "changing" limitation should be read to require that the measurable blood characteristic be measured, since measurement of the change is the ultimate purpose of the "changing" limitation. *See Vitronics Corp. v. Conceptronics Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (courts must first look to the patent itself, including its claims and specification, when construing the meaning of a limitation). Under this reading, Fresenius contends that its method does not infringe the "changing" limitation because it never measures blood. Ward Decl. ¶ 77. However, this argument presupposes that the Fresenius method does not measure blood, which is a separate question to be answered when examining the "measuring" limitation. Fresenius' argument goes well beyond examining the rest of the patent to seek guidance on construction of the "changing" limitation, and instead subsumes the "measuring" limitation within the "changing" limitation. A reading of the "changing" limitation that includes a measurement element impermissibly risks rendering the "measuring" limitation superfluous. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (a claim construction

that gives meaning to all terms of the claim is preferred to one that does not). The "changing" limitation in claim 1 of the '419 patent only requires that the change be "measurable," not that it be measured. Here, the introduction of sodium changes a "selected blood parameter," and there is no dispute that this characteristic *could* be measured. Furthermore, no argument is advanced that the change in blood is not "distinguishable" as per the '989 patent and claim 10 of the '419 patent.

In sum, Transonic has met its burden of showing that there is no issue of material fact on whether the Fresenius method changes a selected blood parameter that is measurable as described in the patents-in-suit. Accordingly, the Court finds that Fresenius literally infringes the "changing" limitation of the three claims at issue.

**B. "Measuring"**

The "measuring" limitation is expressed as follows:

> Claim 1 of the '989 patent: "measuring the amount of distinguishable blood characteristic in said removed portion of mixed blood"
>
> Claim 1 of the '419 patent: "measuring the measurable physical characteristic of the blood in the removed portion of combined blood"
>
> Claim 10 of the '419 patent: "measuring the amount of distinguishable blood characteristic in the removed portion of mixed blood"

Relying on a dictionary, Fresenius asserts that the plain meaning of "measure" is to "ascertain the dimensions, quantity, or capacity." American Heritage Dictionary Second College Edition 776 (2d ed. 1982). Under this definition, it argues that its method does not measure blood, since no quantitative value for a blood parameter is ever derived under its method. It contends that its method only measures dialysate parameters. Ward Decl. ¶¶ 73-76.

Based on an online dictionary, Transonic argues for a broader construction of "measuring" as meaning to "judge the quality, effect, importance, or value of something." Briggs Decl. Ex. 5. Transonic contends that Fresenius is measuring a ratio of concentration differences, and that the ratio of sodium concentration changes in the dialysate is equal to the ratio of the sodium concentration changes in the blood at the steady state point when Fresenius makes its measurements. *See* Guckenheimer Decl. ¶¶ 27-31; Guckenheimer Supp. Decl. ¶ 61. Transonic further argues that this

constitutes an indirect measurement of the blood that falls within the limitations of its patents. *See* Guckenheimer Decl. ¶¶ 27-31.

Words within patent claims have the "meaning and scope with which they are used in the specification and prosecution history." *Kinik Co. v. ITC*, 362 F. 3d 1359, 65 (Fed. Cir. 2004). The word "measuring" in the '989 and '419 patents is used solely in the context of quantifying a parameter of mixed blood, since this measurement is then used as a factor in an equation that solves for shunt blood flow. *See* Krivitski Decl. ¶ 22 (final step of Transonic's process is "calculating the access flow from the changed blood characteristic so measured"). Nothing in the patents suggests that the term "measuring" can mean anything other than ascertaining a quantitative value for a blood parameter. Transonic's proposed definition of the word "measure" as meaning to "judge" is not consonant with its usage in the patents, as a "judgment" cannot be used as a factor in an equation. The Court cannot adopt a dictionary definition of "measuring" that is inconsistent with its usage in the patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). The definition advanced by Fresenius, in which "measurement" means the ascertainment of a numeric value for some intrinsic property of blood, is the definition under which the Transonic method functions. The Court adopts this definition to analyze whether the Fresenius method infringes.

Fresenius' method does not produce such a quantitative value. Even if the steady state ratios of concentration differences of dialysate sodium and blood sodium are equal, as Transonic argues, such a ratio is not a "measurement" within the meaning of the patent since it does not produce a numeric value for a blood characteristic. Transonic argues that Fresenius' witness has conceded that the concept of "measuring" includes measurements of relative changes in value, and that the language of dependent claims 14, 20, and 24 in the '419 patent adds the concept of "measuring a value proportional" to the change in concentration of the blood characteristic to the "measuring" limitation. Transonic asserts that these two facts mean that a measurement of a ratio of concentration differences is included in the "measuring" limitation. However, the proportional measurement described in the cited dependent claims is an absolute measurement of a blood parameter, and is performed so that the measurement can then be used in an indicator dilution equation to solve for flow rate. *See* Krivitski Decl. ¶¶ 24-25 (describing how a sensor that measures the electrical conductivity of blood can be used when sodium

is used as an indicator, and that the form of the indicator dilution equation under this embodiment is based on units of conductivity). The claim language on "measuring a value proportional" to the change in blood sodium concentration therefore does not encompass a "ratio of concentration differences." Any "ratio of concentration differences" produced under the Fresenius method is not a quantitative assessment of a property of blood as is required to practice the method taught by the patents-in-suit. For these reasons, even if the facts are construed in Transonic's favor, the Court concludes that Fresenius does not literally infringe the "measuring" limitation of the '989 and '419 patents.

**D. "Calculating" or "Determining"**

The "calculating"/"determining" limitation is expressed as follows:

> Claim 1 of the '989 patent: "calculating the rate of flow of said shunt blood flow in said arterio-venous shunt from said measured amount of distinguishable blood characteristic"
>
> Claim 1 of the '419 patent: "determining the rate of flow of the shunt blood flow in the arterio-venous shunt corresponding to the measured measurable physical characteristic of the blood"
>
> Claim 10 of the '419 patent: "calculating the rate of flow of the shunt blood flow in the arterio-venous shunt from the measured amount of distinguishable blood characteristic" wherein such rate is calculated using one of the listed indicator dilution equations or a derivation thereof.

The parties offer competing testimony on whether the equations used in the Fresenius method embody the principles of indicator dilution as expressed in the equations taught by the '989 and '419 patents. However, since Fresenius does not infringe upon the "measuring" limitation, the Court need not resolve the parties' dispute over the equivalence of their respective mathematical equations.[5]

## II. Doctrine of Equivalents

Fresenius contends that it does not infringe the "measuring" limitation under the doctrine of equivalents because (1) prosecution history estoppel applies, and (2) the "measuring" limitations of the patents-in-suit perform a substantially different function in a substantially different way from the "measuring" feature of the Fresenius method. The Court agrees with the latter argument.

---

[5] This order also does not address the question of whether the term "determining" in the '419 patent is equivalent to or broader than the term "calculating" used in the other two claims.

To infringe under the doctrine of equivalents, the "measuring" feature of the Fresenius method must perform substantially the same function in substantially the same way to achieve substantially the same result as the "measuring" limitations of the Transonic patents. *See AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005). The role played by the "measuring" limitation in the context of the patent claim informs this inquiry. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). If the limitation "must play a role in the context of the specific claim language, then an accused device which cannot play that role, or which plays a substantially different role, cannot infringe under the doctrine of equivalents." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1090 (Fed. Cir. 1998).

Transonic's "measuring" limitation accomplishes its function through the use of a sensor that measures the electrical conductivity, or some other property, of blood. *See* Krivitski Decl. ¶¶ 24-25. In contrast, the Fresenius method's "measuring" element accomplishes its function by measuring sodium concentration of the dialysate. *See* Guckenheimer Decl. ¶¶ 34-35; Ward Decl. ¶¶ 121-122. Measuring dialysate is substantially different from measuring blood. This is particularly true because it is not possible to derive one measurement from the other. The practice of Transonic's "measuring" limitation produces a numerical value for a blood characteristic, while the "measuring" function of the Fresenius method is unable to play this role. The two "measuring" features therefore operate in substantially different ways. Accordingly, the Court finds that the Fresenius method does not infringe the "measuring" limitation of the patents-in-suit under the doctrine of equivalents.

## III. Defendant's Motion to Strike

Fresenius has filed for leave to file a motion to strike the supplemental declaration of Dr. John Guckenheimer submitted with Transonic's reply brief, contending that it sets forth a different ratio equation than what was described in the initial declaration, and for leave to file a surreply to address this allegedly new equation. Fresenius subsequently filed such a motion to strike and a surreply. The Court GRANTS defendant's motion for leave to file the motion to strike and to file the surreply (Docket No. 251), and DENIES the motion to strike (Docket No. 252). Through the surreply, defendants have had the opportunity to address any "new" evidence or arguments submitted by plaintiff. Moreover, there

United States District Court
For the Northern District of California

is no prejudice to the defendants since the alleged new evidence goes towards showing that the Fresenius method measures a ratio of sodium concentration differences. *See* Guckenheimer Supp. Decl. ¶ 60. As outlined above, the Court finds no infringement of the "measuring" limitation even if the Fresenius method does measure such a ratio.

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment of noninfringement of the '989 and '419 patents and DENIES plaintiff's cross-motion for summary judgment of infringement (Docket Nos. 226, 246).

**IT IS SO ORDERED.**

Dated: April 4, 2006

SUSAN ILLSTON
United States District Judge